IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALEXANDER LANZ, et al., : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:23-cv-05344-LMM |
| LHNH LAVISTA LLC, et al., : | |
| : | |
| Defendants. : | |

**ORDER**

This case comes before the Court on Plaintiffs' Motion for Leave to File Second Amended Complaint [80] and Plaintiffs' Motion to Certify Class [81]. After due consideration, the Court enters the following Order.

**I.    BACKGROUND**

This class action involves a fire that destroyed a 284-unit apartment complex, comprised of two buildings, in Atlanta, Georgia. Dkt. No. [40]. The fire was caused by a resident of the apartment complex who discharged fireworks from the roof of the building. Id. ¶¶ 52–53. Building 1 collapsed because of the fire, and residents of Building 1 and Building 2 could not return to the property after the fire because the entire complex was uninhabitable.[1] Id. ¶¶ 67–69.

---

[1] The parties appear to dispute whether Building 2 was left inhabitable after the fire due to lack of power or smoke damage. See Dkt. No. [81-1] at 3; cf. Dkt. No.

Although Building 2 was not a total loss after the fire, Plaintiffs allege that residents of Building 2 were not allowed to enter it or to access their belongings. Id. ¶ 73. Nevertheless, Building 2 residents received bills for rent and service charges, and Defendants did not return pro-rated rent for the rest of the month following the fire. Id. ¶ 75. When Building 2 residents were finally allowed to retrieve some of their belongings, Defendants required them to sign full liability releases and threatened some with arrest if they tried to enter the property without signing. Id. ¶¶ 80–83. But, before Defendants allowed Building 2 residents to return at all, Building 2 was looted due to Defendants' alleged understaffing and failure to ensure appropriate security after the fire. Id. ¶ 86–88. Both buildings were subsequently razed. Dkt. No. [81-1] at 3. Thus, Plaintiffs, residents of both Building 1 and 2, bring claims for compensatory damages that include loss of personal property. Id. ¶ 98.

Plaintiffs allege that Defendants, the owners and operators of the property, negligently failed to maintain the facility's fire safety features and are therefore responsible for damages stemming from the fire. Id. ¶¶ 1–10, 30–69. Additionally, Plaintiffs allege that Defendants had knowledge that individuals were accessing the roof to discharge fireworks and firearms and took no preventative action. Id. ¶ 32. Plaintiffs brought the instant action against

---

[91] at 3. Regardless, both parties appear to agree that Building 2 was subsequently uninhabitable because of the consequences of the fire. Id.

Defendants, claiming that Defendants are liable under theories of both negligence and nuisance. Id. ¶¶ 106–113.

Additionally, Plaintiffs seek to amend the Complaint to add a premises liability claim. Dkt. No. [80]. The proposed Amended Complaint includes more information regarding Defendants' alleged knowledge of previous incidents where tenants discharged fireworks on the roof, including the resident who discharged fireworks the night of the fire. Dkt. No. [80-1] ¶¶ 60–63. And Plaintiffs seek to add that Defendants allegedly recognized the severity of the security threat they faced but decided to take no preventative action. Id. ¶¶ 64–71. Thus, Plaintiffs seek to add a claim against Defendants based on their active and constructive knowledge of fireworks being discharged on the premises by the same tenant who caused the fire and the danger that could occur given their failure to maintain the facility's fire safety features. Id. ¶¶ 133–149.

Finally, pursuant to each of their claims, Plaintiffs seek certification of the following class: "All residents at The Reserve at Lavista Walk apartment complex as of November 10, 2023, as identified in the Defendants' leasing records. Charnelle and Robert Stokes are excluded from the class." Dkt. No. [81] at 1. Plaintiffs further acknowledge that the class allegations may be limited to Defendants' liability for causing the fire. Dkt. No. [81-1] at 3.

The Court will first address Plaintiffs' motion to amend. It will then turn to the motion for class certification.

**II.   MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

   **A. Legal Standard**

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Even so, granting leave to amend is not automatic. Faser v. Sears, Roebuck & Co., 674 F.2d 856, 859–60 (11th Cir. 1982); Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979). District courts have "extensive discretion" in deciding whether to grant leave to amend and may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays, or is futile." Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (listing undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies, undue prejudice to opposing party, and futility as factors to consider under Rule 15(a)).

   **B. Discussion**

Plaintiffs move for leave to amend their complaint, seeking to add a premises liability claim. Dkt. No. [80]. Defendants oppose Plaintiffs' motion, arguing that: (1) amendment would prejudice them and delay this case; and (2) Plaintiffs' Motion is untimely and subject to Rule 16's "good cause" standard, specifically that Plaintiffs cannot amend the Complaint due to their lack of diligence. Dkt. No. [83]. The Court addresses each of Defendants' arguments below.

### 1. Prejudice & Undue Delay

Defendants first contend that amendment would cause unduly delay and prejudice. Id. at 5–8. Particularly, Defendants argue that the shortened time for discovery and for filing dispositive motions relating to this claim would be unfairly prejudicial to them. Id. Plaintiffs respond that they did not know the extent of Defendants' knowledge of the alleged security breaches until only recently when examining documents produced by Defendants. Dkt. No. [86] at 4–5. Additionally, Plaintiffs dispute that Defendants will be prejudiced because no depositions had been taken at the time of Plaintiffs' Motion. Id. at 5. The Court agrees with Plaintiffs.

Defendants take issue with the time left for discovery, Dkt. No. [83] at 8, but the Court has since granted another discovery extension. See Dkt. No. [117]. Further, Defendants received notice of Plaintiffs' request to amend their Complaint before any depositions were conducted. Dkt. No. [86] at 3; Dkt. No. [80]. Thus, Defendants have received ample notice of the allegations and additional time to conduct discovery and defend against such a claim. Defendants will not be unfairly prejudiced by Plaintiffs' amendment.

### 2. Timeliness & Good Cause

Additionally, Defendants argue that Plaintiffs have not shown good cause to amend the pleadings after the Court's deadline. Dkt. No. [83] at 8–10. Specifically, Defendants assert that Plaintiffs have no new basis to bring a premises liability claim where the universe of facts to support such a claim

already existed at the time of the original Complaint. Id. at 8. Further, Defendants argue that Plaintiffs have not shown the diligence required to meet the good cause standard because Plaintiffs failed to bring the claim until eighteen months after the suit was filed and almost a year after the deadline for filing amended pleadings passed. Id. at 10.

      The Court disagrees with Defendants. While Defendants are correct that Plaintiffs did not move to add a premises liability claim until over a year after the suit was filed, the Court granted multiple time extensions for Defendants to complete document production. See Dkt. Nos. [70, 72, 74]. And Plaintiffs moved to amend their Complaint within two months of this deadline, which generated over 20,000 documents from Defendants. See Dkt. No. [80]; Dkt. No. [80-2] ¶ 15. Further, these documents included information previously unknown to Plaintiffs that could strengthen a premises liability claim. See Dkt. Nos. [80-2, 80-3]. While these specific facts do relate to the "general universe" of facts that Plaintiffs alleged in their negligence claim in their original Complaint, Plaintiffs did not pursue a premises liability claim until learning that: (a) Defendants had actual knowledge that the resident who caused the fire had engaged in prior criminal activity on the property and (b) that Defendants allegedly took no action after local managers asked for more security. Dkt. No. [83] at 1–2. Thus, the Court finds good cause and will allow Plaintiffs to amend their Complaint to add a premises liability claim.

### III. MOTION TO CERTIFY CLASS

#### A. Legal Standard

A district court may certify a class only upon a showing that the putative class satisfies the prerequisites set forth in Rule 23(a) of the Federal Rules of Civil Procedure and that the putative class meets at least one of the requirements set forth in Rule 23(b). Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009). The four prerequisites set out in Rule 23(a) are numerosity, commonality, typicality, and adequacy:

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Where, as here, the plaintiffs seek certification under Rule 23(b)(3), see Dkt. No. [81], the class action may be maintained if "the court [additionally] finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ P. 23(b)(3).

### B. Discussion

Plaintiffs seek certification pursuant to Rule 23(b)(3) of the following class: "All residents at The Reserve at Lavista Walk apartment complex as of November 10, 2023, as identified in the Defendants' leasing records. Charnelle and Robert Stokes are excluded from the class." Dkt. No. [81] at 2. Plaintiffs further acknowledge that the class allegations may be limited to Defendants' liability for causing the fire. Dkt. No. [81-1] at 21; Dkt. No. [94] at 5–9. Defendants do not oppose class certification on Rule 23(a) grounds, and the Court is satisfied that Plaintiffs' proposed class satisfies Rule 23(a)'s criteria. Dkt. No. [91] at 8. However, Defendants oppose class certification under Rule 23(b)(3), arguing that (1) Plaintiffs' claims are too varied to satisfy the predominance requirement and (2) a class action is not the superior means of adjudicating this dispute. Id. at 1. The Court addresses each of these arguments below and determines that, at this stage in the proceeding, certification of the class is appropriate solely as it pertains to liability for the fire.

#### 1. Predominance

First, Defendants argue that there is no issue pertaining to either liability or damages that applies to the proposed class as whole. Id. at 10. Specifically, Defendants assert: (a) that liability for the fire only affects Building 1 residents; (b) whether Defendants supplied sufficient security to prevent looting only affects Building 2 residents; and (c) that other claims—including failure to return rent or security deposits, intimidation and coercion to sign waivers, and fraudulent

misrepresentations—only apply to some, but not all, residents in both Building 1 and 2. Id. Plaintiffs respond that resolution of liability for the fire advances claims of all class members and that individualized damages can be handled separately and are not futile to the predominance requirement. Dkt. No. [94] at 5–8. The Court agrees with Plaintiffs.

### a. Liability for the Fire

Starting with liability, Defendants contest that because there was no fire damage to Building 2, the issue of liability for the fire does not predominate amongst the entire proposed class. Dkt. No. [91] at 10. Under Rule 23(b)(3), "[c]ommon issues of fact and law predominate . . . if they have a direct impact on every class member." Carter v. City of Montgomery, 108 F.4th 1334, 1341 (11th Cir. 2024) (citation modified). To determine whether class or individual issues predominate, the Court must look to "the claims, defenses, relevant facts, and applicable substantive law to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004) (citation modified), abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 128 (2008).

Here, Plaintiffs have alleged claims for negligence, nuisance, and premises liability. Dkt. No. [80-1]. Each of these claims is based on Plaintiffs' contention that Defendants' actions and omissions led to the fire, which caused economic harm to residents of both Building 1 and Building 2. Id. Thus, the core factual and

9

legal issues with respect to liability in this case—whether Defendants' conduct led to the fire and to what extent Defendants should be held liable—are resolvable by proof that is common to all class members. While Defendants note that Building 2 did not have actual physical fire damage, they acknowledge that "Building 2 was indeed uninhabitable after the fire." Dkt. No. [91] at 3. Therefore, liability for the fire directly impacts both sets of residents and thus "every class member." Carter, 108 F.4th at 1341.

### b. Looting and Vandalism

Next, Defendants assert that the allegations of looting and vandalism of Building 2 after the fire involve actions or omissions unrelated to liability for the fire. Dkt. No. [91] at 4, 10. But that suggestion ignores the alleged link between the fire, the building being uninhabitable, and the looting and vandalism. Thus, liability for the fire is a necessary initial determination and affects "every class member." Carter, 108 F.4th at 1341. However, to the extent that the adequacy of Defendants' security becomes necessary to determine the proper damages for residents of Building 2, mechanisms exist to refine or divide the class into sub-classes. See Brown v. Electrolux Home Products, Inc., 817 F.3d 1225, 1239 (11th Cir. 2016) ("District courts have many tools to decide individual damages: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove

damages; (4) creating subclasses; or (5) altering or amending the class.") (citation modified).

### c. Individualized Damages

Finally, Defendants highlight Plaintiffs' allegations regarding Defendants' failure to return money, intimidation and coercion, and fraudulent misrepresentations as too individualized. Dkt. No. [91] at 10–11. However, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1261 (11th Cir. 2003). Instead, "individual damages defeat predominance if computing them will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable" or "when they are accompanied by significant individualized questions going to liability." Brown, 817 F.3d at 1240 (citation modified). Here, these additional issues do not displace the centrality of liability for the fire. And calculating individualized damages will not be "intolerable" but rather may be aided by a variety of available mechanisms, including decertification after determining liability for the fire. Brown, 817 F.3d at 1239–40. Thus, the Court determines that common issues of law and fact regarding causation and liability predominate over the issues requiring individualized proof.[2]

---

[2] The Court leaves open the issue of whether it may be expedient to have a subclass relating to the causation and/or liability as it relates to the looting and vandalism claims.

### 2. Superiority

Next, Defendants argue that litigating the many individualized issues in this case via class action is not the superior way to adjudicate the case. Dkt. No. [91] at 12–14. Specifically, Defendants point to the various individualized issues affecting damages, several separate lawsuits filed by putative class members, and the large scale of potential damages as counseling against a class action. Id. Plaintiffs respond that repeated litigation of the same core issue of liability for the fire would be inefficient and that only three individual lawsuits have been filed. Dkt. No. [94] at 8–9. The Court disagrees with Defendants.

The second prong of the Rule 23(b)(3) test, whether a class action is the superior method of adjudication, focuses on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." Klay, 382 F.3d at 1269. Relevant factors to the superiority analysis include: (a) the class members' interests in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by other members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). However, this list is not exhaustive and "the predominance analysis . . . has a tremendous impact on the superiority analysis." Klay, 382 F.3d at 1269.

Although Defendants point to potential issues with determining damages on a class basis, neither their arguments nor any of the Rule 23(b)(3) factors counsel against certification of Plaintiffs' proposed class to first determine liability for the fire. In keeping with the Court's findings with the predominance requirement, the issue of individualized damages does not alter the core issue of liability for the fire, which is common to the entire class and will involve the same evidence. Although three individual lawsuits have been filed, at least 220 residents have provided information to Plaintiffs' counsel and have not filed separately. Dkt. No. [94] at 9; Dkt. No. [81-2] ¶ 3. Thus, the Court finds that a class trial on liability for the fire followed by separate proceedings to determine damages is the superior method of adjudicating the case. Therefore, the Court will certify Plaintiffs' proposed class with respect to the issue of liability for the fire only.

## IV.   CONCLUSION

Accordingly, Plaintiffs' Motion for Leave to File Second Amended Complaint [80] is **GRANTED**. Further, Plaintiffs' Motion to Certify Class [81] is **GRANTED IN PART**. The Court therefore **CERTIFIES** this action as a class action pursuant to Rules 23(a) and (b)(3) with respect to the issue of liability for the fire. The Class is defined as: All residents at The Reserve at Lavista Walk apartment complex as of November 10, 2023, as identified in the Defendants' leasing records. Charnelle and Robert Stokes are excluded from the class. Further, the named plaintiffs are appointed as class representatives, and

Plaintiffs' counsel—Adam L. Hoipkemier of Epps, Holloway, Deloach & Hoipkemier, LLC; Douglas Dean of Dean Thaxton, LLC; and Kenneth William Brosnahan, Linda Carpenter, and Sharon Leah Neal of the Brosnahan Law Firm—are appointed as class counsel. See Fed. R. Civ. P. 23(a)(4) & (g)(1)(A).

It is also unclear as to whether the parties have attempted to mediate the case. The parties are **ORDERED** to confer to discuss the possibility of mediation. If the parties would like the Court to refer this case to mediation with a magistrate judge or the partis request time to mediate this case before a private mediator, please notify the Court.

**IT IS SO ORDERED** this 19th day November, 2025.

_____
**Leigh Martin May**
**Chief United States District Judge**