**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ALEXANDER LANZ, ALYSSA GREENE, SHANAYA DESSIN, and VINCENT LEIJA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LHNH LAVISTA LLC; LHNH LAVISTA TIC II, LLC; LHNH LAVISTA TIC III, LLC; SILVERPOINT MANAGEMENT, LLC; and AVENIUM GROUP, LLC,<br><br>Defendants. | Civil Action No.<br>**1:23-cv-05344-LMM** |

**PLAINTIFFS' UNOPPOSED MOTION TO CERTIFY SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH SUPPORTING MEMORANDUM OF LAW**

Plaintiffs Alexander Lanz, Alyssa Greene, Shanaya Dessin, and Vincent Leija (the "Plaintiffs" or "Class Representatives"), individually and on behalf of the proposed Settlement Class, respectfully move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order: (1) preliminarily approving the proposed class action settlement, attached as Exhibit A, resolving all claims against the Defendants related to the November 10, 2023 fire at The Reserve at LaVista Walk apartment complex in exchange for an $8,450,000 common fund; (2)

certifying the Settlement Class for settlement purposes only; (3) appointing the Class Representatives and Class Counsel; (4) approving the form and manner of notice; (5) appointing Simpluris, Inc. as Settlement Administrator; and (6) scheduling a final approval hearing. Defendants do not oppose the relief requested.

Specifically, Plaintiffs request that the Court enter the accompanying proposed Preliminary Approval Order agreed to with the Defendants, which will:

1. Preliminarily approve the Settlement set forth in the Class Settlement and Release Agreement as fair, reasonable, and adequate, and determine that the Court will likely be able to approve it under Rule 23(e)(2);
2. Certify the Settlement Class, for settlement purposes only, under Rules 23(a) and 23(b)(3);
3. Appoint Alexander Lanz, Alyssa Greene, Shanaya Dessin, and Vincent Leija as Class Representatives;
4. Appoint The Brosnahan Law Firm, Dean Thaxton LLC, and Epps Holloway DeLoach & Hoipkemier, LLC as Class Counsel under Rule 23(g);
5. Approve the proposed separate forms and manner of notice to residents and Subrogated Insurers and direct that notice be disseminated to the Settlement Class accordingly;

6. Appoint Simpluris, Inc. as Settlement Administrator and direct it to carry out the duties of that role, including dissemination of notice and the adjustment and processing of claims;
7. Approve the proposed Resident Claim Form and Subrogation Claim Form;
8. Enter the proposed schedule of dates and deadlines set forth below; and
9. Schedule a Final Approval Hearing to consider final approval of the Settlement and Class Counsel's application for attorneys' fees and expenses.

This Motion is based on the accompanying Memorandum of Law and the exhibits thereto (including the Settlement Agreement and its exhibits), the pleadings and records on file, and any argument the Court may entertain.

This 22nd day of July, 2026.

/s/ Kenneth Brosnahan
Kenneth Brosnahan, Esq.
Georgia State Bar No. 086345
E-mail: kwb@brosnahan-law.com
Linda G. Carpenter, Esq.
Georgia State Bar No. 111285
E-mail: lgc@brosnahan-law.com
The Brosnahan Law Firm
31 Lenox Point, N.E.
Atlanta, Georgia 30324
T: (404) 853-8964

Douglas H. Dean
Georgia Bar No. 130988
E: doug@deanthaxton.law

Dean Thaxton, LLC
601 E. 14th Avenue (31015)
Post Office Box 5005
Cordele, Georgia 31010
T: (229) 271-9323

Adam Hoipkemier, Esq.
Georgia State Bar No. 745811
E-mail: adam@ehdhlaw.com
Epps Holloway DeLoach
& Hoipkemier LLC
1220 Langford Drive
Bldg. 200
Watkinsville, Georgia 30677
T: (706) 508-4000

*Counsel for Plaintiffs*

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO CERTIFY SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## I. INTRODUCTION

This case arises from a November 2023 fire at The Reserve at LaVista Walk apartments in Atlanta, Georgia (the "Fire"), which displaced residents and destroyed or damaged their personal property. Plaintiffs allege that Defendants LHNH LaVista LLC, LHNH LaVista TIC II, LLC, LHNH LaVista TIC III, LLC, Silverpoint Management, LLC, and Avenium Group, LLC are responsible for the Fire and the resulting losses under theories of premises liability, nuisance, and negligence. Defendants deny liability and assert that the Fire was the result of a criminal act by a tenant.

After arm's-length negotiations, including a full-day mediation session and additional mediator-facilitated discussions, the Parties have reached a settlement that creates a cash common fund of $8,450,000.00 for the benefit of the Settlement Class (the "Settlement").[1] The fund will compensate the natural persons who lived at The Reserve at LaVista Walk on the date of the Fire, as well as the insurers that paid property-loss claims relating to the Fire and hold subrogation rights.

[1] Unless otherwise defined, capitalized terms have the meanings given in the Class Settlement and Release Agreement (the "Settlement Agreement"), attached as Exhibit A.

As described below, the net Settlement Fund is split into two pools: (1) a displacement pool of $1,300,000 to be paid per capita to every adult class member that submits a claim (i.e., $4,594 per class member based on the 283 residents identified in Defendants' leasing records); and (2) a property loss pool for the balance of the net common fund (approximately $4,000,000) to be allocated to the claims of minor children ($2,500 each), adult residents' approved property losses, and Subrogated Insurers' approved subrogation claims. Class members' property loss claims will vary based on their individual damages and the claims rate. The mean property loss claim is expected to be approximately $20,000.

Approval of a class settlement is a two-step process. *See* Fed. R. Civ. P. 23(e). At this first step, the Court considers whether it "will likely be able to" approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2) and to certify the Settlement Class, such that notice should issue to the Class. Fed. R. Civ. P. 23(e)(1)(B). If the Court grants preliminary approval, notice will be disseminated, Class Members will have an opportunity to participate, object, or opt out, and the Court will consider final approval after a hearing.

The Settlement readily satisfies the standard for preliminary approval. It is the product of informed, arm's-length negotiation facilitated by an experienced mediator; it provides substantial and certain monetary relief in the face of the real risks and delay of continued litigation; it treats Class Members equitably through a

transparent Settlement Plan that allocates the settlement fund based on Class Members' actual losses, accounts for insurance recoveries, and compensates every adult class member for the harm of displacement; and it has no obvious deficiencies. The proposed Settlement Class also meets every requirement of Rules 23(a) and 23(b)(3) for settlement purposes. Plaintiffs respectfully request that the Court grant preliminary approval, certify the Settlement Class, approve the notice program, and schedule a final approval hearing.

## II. BACKGROUND

### A. The Fire and the Litigation

On the night of November 10, 2023, a fire swept through The Reserve at LaVista Walk apartments in Atlanta, Georgia. Residents were forced to evacuate in the middle of the night, many lost personal belongings, and many were displaced from their homes. Plaintiffs filed this putative class action in the United States District Court for the Northern District of Georgia, alleging that Defendants—the owners and managers of the property—are liable for the Fire and the losses residents suffered, including displacement and lost or damaged personal property.

Through the course of more than two and a half years of litigation, Class Counsel investigated the origin and cause of the Fire, took twenty-four depositions, reviewed and assessed tens of thousands of documents related to Defendants' liability and defenses, evaluated the residents' losses and the available sources of

recovery, and analyzed the insurance and subrogation interests implicated by the Fire. By the time the Parties reached agreement, Class Counsel had a well-developed understanding of the strengths and weaknesses of the claims and defenses.

### B. The Settlement Negotiations

The Settlement is the product of arm's-length negotiation facilitated by Charlie McDaniel, an experienced and well-respected mediator. The Parties first participated in a full-day mediation session before Mr. McDaniel. That session did not resolve the case. Following the mediation, the Parties continued to engage in settlement discussions facilitated by Mr. McDaniel over a period of several weeks. Those continued, mediator-assisted negotiations ultimately produced the agreement now before the Court. The involvement of an experienced neutral throughout the process confirms that the Settlement was reached through genuine, adversarial bargaining and not through any collusion.

## III. SUMMARY OF THE SETTLEMENT TERMS

### A. The Settlement Class and the Release

The Settlement Agreement defines the Settlement Class as all natural persons who lived at The Reserve at LaVista Walk on November 10, 2023, including both adults (eighteen or older) and minor children (under eighteen), together with their assignees, subrogated insurers, and successors. Excluded from the Settlement Class

are Charnelle Gunn and Robert Stokes, and any person or entity that has already settled, assigned, or obtained a final judgment on its claims relating to the Fire.

In exchange for the benefits of the Settlement, Class Members will release the Defendants from the claims that arise out of, result from, are due to, or relate in any way to the Fire, as set forth in the Settlement Agreement. The release is tailored to the conduct and occurrence at the center of this litigation—the Fire and the losses it caused.

**B. The $8,450,000 Non-Reversionary Common Fund**

Defendants will pay $8,450,000 into a common Settlement Fund. After deduction of Court-approved attorneys' fees and litigation expenses, notice and administration costs, and taxes, the balance (the "Net Settlement Fund") will be distributed to Class Members under the Court-approved Settlement Plan. Class Counsel will seek an award of attorneys' fees not to exceed 33⅓% of the Settlement Fund ($2,813,850), plus reimbursement of litigation expenses, to be decided by the Court at final approval.[2]

The Settlement Plan distributes the Net Settlement Fund through two components designed to match the kinds of harm the Fire caused:

---

[2]By granting preliminary approval, the Court does not pass upon the reasonableness of any fee, expense, or other application, each of which will be separately briefed and decided at final approval. *See* Fed. R. Civ. P. 23(h); *Camden I*, 946 F.2d at 774.

**Displacement Pool.** A fixed $1,300,000 Displacement Pool is shared equally, on a per-capita basis, among all adult claimants. This component compensates the common experience of evacuation and displacement that every resident shared, without requiring proof of differing individual amounts.

**Property Loss Pool.** The balance of the Net Settlement Fund forms the Property Loss Pool, which compensates property losses. Adult claimants and subrogated insurers participate in this pool on equal footing, with each recovering pro rata based on the recognized value of its property-loss claim. Property-loss claims are valued by Simpluris, which has experience valuing fire loss claims in the Maui fire settlement, so that recognized values are determined by a neutral professional applying consistent criteria. The Plan coordinates with subrogation so that each underlying loss is recognized once, avoiding any double recovery as between an insured resident and that resident's insurer.

**Minor Class Members.** Each minor Class Member receives a flat payment from the Property Loss Pool, paid in full and without pro rata reduction, claimed on the minor's behalf by a parent or legal guardian. Minors do not share in the Displacement Pool. This structure recognizes the minors' inclusion in the Class while keeping their recovery simple, certain, and free of the documentation burden that applies to property-loss claims.

**No service awards.** The Settlement does not provide for service or incentive awards to the Class Representatives. Each Class Representative participates in the Settlement on the same terms as every other Class Member.

### C. Notice and Claims Administration

The Parties have selected Simpluris, Inc. ("Simpluris"), an experienced national class action administrator, to serve as Settlement Administrator. Simpluris will disseminate notice, maintain the Settlement website and toll-free line, receive and process Claim Forms and Subrogation Claim Forms, and administer distributions under the Settlement Plan. The proposed notice program, described in Section VI below, includes direct notice to identifiable Class Members and Subrogated Insurers and a supporting publication and digital component.[3]

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Where, as here, the Parties reach a settlement before certification, the Court determines whether to certify the class for settlement purposes only. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997). Certification is warranted when the four requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. In the settlement context, the Court need not consider whether the case

[3] No later than ten days after this Motion is filed, Defendants will serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, on the appropriate federal and state officials.

would present management problems at trial, *see id.* at 620, because there will be no trial. Each requirement is satisfied here.

### A. The Requirements of Rule 23(a) Are Satisfied

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class comprises at least 283 adult residents, as well as minor children, who resided at The Reserve at LaVista Walk on the date of the Fire, together with the insurers that paid property-loss claims and hold subrogation rights. Joinder of so many geographically dispersed individuals, including former residents who have since relocated, is plainly impracticable. Numerosity is satisfied.

#### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the class members' claims depend on a common contention capable of classwide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Class Members' claims arise from a single event—the Fire—and from the same alleged conduct by the same Defendants. Common questions include whether Defendants were responsible for the Fire, whether Defendants breached duties owed to residents, and whether that conduct

caused the residents' losses. These questions are common to every Class Member and can be resolved on a classwide basis.

**3. Typicality**

Rule 23(a)(3) requires that the representatives' claims be "typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). The Class Representatives' claims arise from the same event and the same course of conduct, and rest on the same legal theories, as the claims of the absent Class Members. Each Class Representative lived at the property on the date of the Fire and suffered the same types of harm—displacement and loss of or damage to personal property—as the residents they seek to represent. Typicality is satisfied.

**4. Adequacy**

Rule 23(a)(4) requires that the representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met where the representatives have no interests antagonistic to the class and class counsel are qualified and capable. The Class Representatives' interests are aligned with those of the Class and the Class Representatives have actively participated by providing information about their losses, giving depositions and providing documents, and evaluating and approving the Settlement. Because the Settlement provides no service awards, the Class Representatives recover on the same terms as every other Class Member, eliminating any structural conflict. Class Counsel are experienced in

complex and class litigation and have vigorously prosecuted this action. *See* Hoipkemier Decl. Adequacy is satisfied.

### B. The Requirements of Rule 23(b)(3) Are Satisfied

#### 1. Predominance

Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Here, the central questions—Defendants' responsibility for the Fire and for the residents' resulting losses—arise from a single occurrence and a common course of conduct, and they predominate over any individualized questions. Individual differences in the amount of each Class Member's loss do not defeat predominance; the Settlement Plan addresses those differences through an orderly claims-and-valuation process, and in the settlement posture there is no trial in which individualized damages issues could create inefficiency. *See id.* at 620, 623–25.

#### 2. Superiority

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A class settlement is the superior method here. Many Class Members—

particularly those with modest property losses—would have little practical ability to pursue individual claims, and the cost of individually litigating fire-causation issues, including expert proof, would dwarf most individual recoveries. A single classwide resolution allows every affected resident, including those who never retained counsel, to obtain compensation from a common fund without the expense, risk, and delay of separate suits, while affording Defendants a comprehensive resolution. Superiority is satisfied.

## V. THE COURT WILL LIKELY BE ABLE TO APPROVE THE SETTLEMENT

### A. The Standard for Preliminary Approval

Public policy strongly favors the settlement of class actions. *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009). At preliminary approval, the Court considers whether it "will likely be able to" finally approve the Settlement under Rule 23(e)(2) and to certify the Class, so that notice should issue. Fed. R. Civ. P. 23(e)(1)(B). Preliminary approval is appropriate where the settlement "is within range of possible approval or, in other words, [where] there is probable cause to notify the class of the proposed settlement," *Agnone v. Camden Cnty.*, 2019 WL 1368634, at *9 (S.D. Ga. Mar. 26, 2019), and where it "is the result of the parties' good faith negotiations, there are no obvious deficiencies[,] and the settlement falls

within the range of reason," *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

Rule 23(e)(2) directs the Court, at final approval, to consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief, the terms of any proposed fee award, and any agreement made in connection with the proposal; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The Eleventh Circuit's long-standing approval factors, which overlap with Rule 23(e)(2), are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below that range at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court will likely be able to find the Settlement fair, reasonable, and adequate under each measure.

### B. The Settlement Was Negotiated at Arm's Length

The first two Rule 23(e)(2) factors are "procedural" and "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment. Both favor approval. As shown above, the Class Representatives and Class Counsel have adequately represented the Class: Class Counsel investigated the Fire, litigated the case and took extensive deposition and written discovery, evaluated the losses and the available recovery, and negotiated the Settlement with a developed understanding of the case, while the Class Representatives participated throughout. *See* Section IV.A.4, *supra*; *Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *9 (N.D. Ga. May 19, 2014) (courts give "great weight to the recommendations of counsel … given their considerable experience in this type of litigation").

The negotiations were also conducted at arm's length. The Parties did not reach agreement at their first mediation; instead, the Settlement emerged only after a full-day mediation session before Charlie McDaniel and additional discussions facilitated by Mr. McDaniel. The participation of an experienced neutral throughout the process is strong evidence that the bargaining was genuinely adversarial and free of collusion. The first two factors are satisfied.

### C. The Relief Provided Is Adequate

#### 1. The relief outweighs the costs, risks, and delay of continued litigation

In assessing adequacy, the Court weighs the relief the Settlement provides against the strength of the claims and "the risk, expense, complexity, and likely duration of further litigation." The Court "need not" decide whether the settlement is "the best possible deal"; it asks "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697–98 (M.D. Fla. 2005).

The Settlement provides $8,450,000 in cash: a substantial, certain, and immediate recovery. According to the Defendants' leasing records, there were 283 registered occupants on the date of the fire, such that the average per-class member recovery will be at least five figures, with every adult class member entitled to a minimum payment of approximately $4,500. Although Plaintiffs believe in the strength of their claims, continued litigation would carry real risk and delay. Defendants deny liability and would continue to contest responsibility for the Fire, its cause and origin, and the existence and extent of the residents' damages.

Establishing causation in a fire case typically requires a contested "battle of the experts," the outcome of which is inherently uncertain and costly to achieve. Moreover, the Defendants would point the finger at criminal conduct by a tenant as

the cause of the Fire at trial. Even if Plaintiffs prevailed at trial, Defendants could appeal, deferring any recovery for years. The certain present value of the Settlement, free of those risks, strongly favors approval. *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008).

**2. The method of distributing relief is effective**

The Court also considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Settlement Plan is designed to be straightforward and effective. The fixed Displacement Pool of $1,300,000 is distributed per capita to adult claimants who prove residency on the date of the fire and requires no individualized proof of displacement. Property-loss claims are submitted on a simple Claim Form and valued by Simpluris applying consistent criteria, then paid pro rata from the Property Loss Pool. Minors receive a flat payment of $2,500, through a claim filed by their parent or guardian, without documentation of individualized property loss. Subrogated Insurers participate through a Subrogation Claim Form on equal footing with adult claimants, and the Plan coordinates with subrogation so that each loss is recognized once. Simpluris, an experienced administrator, will process claims and make distributions. This structure deters unsupported claims without imposing undue burden on Class Members.

**3. The proposed attorneys' fees are reasonable and reserved for final approval**

Class Counsel will apply for fees not to exceed 33⅓% of the Settlement Fund ($2,813,850), plus litigation expenses. In the Eleventh Circuit, attorneys' fees from a common fund are awarded as a reasonable percentage of the fund. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999). The Eleventh Circuit treats the 20%–30% range as a "benchmark" that may be adjusted in light of the *Johnson* factors, *Camden I*, 946 F.2d at 774–75 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *see also Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242–43 (11th Cir. 2011), and fee awards of one-third of a common fund are commonly approved in this Circuit, *e.g., Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016). By granting preliminary approval, the Court does not pass on the reasonableness of any fee request; Class Counsel's application will be separately briefed and decided at final approval, and Class Members will have the opportunity to object before the Court rules.

**4. The Parties have identified any agreements made in connection with the Settlement**

Rule 23(e)(2)(C)(iv) and Rule 23(e)(3) direct the Court to consider any agreement made in connection with the proposal. The operative agreement is the Class Settlement and Release Agreement and its exhibits, including the Settlement

Plan, the Resident Claim Form, and the Subrogation Claim Form. There are no other agreements related to the Settlement.

The Settlement Agreement permits Defendants to terminate the Settlement if the number of valid requests for exclusion exceeds 15 Class Members; each opt-out carries a reversion of $26,000 to the Defendants from the Settlement Fund. Opt-outs by minor Class Members or Subrogated Insurers do not count toward that threshold and generate no reversion. Such termination provisions are standard and do not affect the fairness of the Settlement.

**D. The Settlement Treats Class Members Equitably**

Finally, the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement Plan apportions relief according to the nature of each Class Member's harm. The Displacement Pool is shared equally among adult claimants, reflecting the common inconvenience and distress that all adult residents experienced. The Property Loss Pool is distributed pro rata according to the recognized value of each property-loss claim, as determined by the Settlement Administrator, so that larger losses receive proportionally larger shares. Simpluris is experienced in valuing property loss claims from its work administering the multi-billion-dollar Maui fire settlement.

Class Members who received compensation from a property insurer have their claims reduced accordingly. Adult claimants and subrogated insurers are treated on

equal footing, and the coordination with subrogation ensures each loss is compensated once. Minor Class Members receive a defined flat $2,500 payment that recognizes their inclusion in the Class and the trauma they suffered. The release applies to all Class Members on the same terms. These distinctions track real differences among the claims and are equitable. *See* Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment. For these reasons, the Court will likely be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2) and the *Bennett* factors, and preliminary approval is warranted.

## VI. THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

For a class certified under Rule 23(b)(3), the Court must direct "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice of a proposed settlement must also be directed "in a reasonable manner to all class members who would be bound." Fed. R. Civ. P. 23(e)(1)(B). The proposed program satisfies both standards.

Simpluris will provide direct notice by mail and, where available, email to Class Members who can be identified through reasonable effort using the property's resident records and other reasonably available data, and will send the Notice to known Subrogated Insurers holding subrogation interests arising from the Fire. The direct notice will be supported by a Settlement website hosting the long-form notice,

the Settlement Agreement, the Settlement Plan, and the Claim Forms; and a toll-free helpline. The forms of notice describe, in plain language, the nature of the action, the definition of and exclusions from the Settlement Class, the Settlement's essential terms, the Settlement Plan, the maximum attorneys' fees and expenses Class Counsel will seek, and Class Members' rights and the deadlines to submit a claim, opt out, or object, as well as the date of the Final Approval Hearing. This notice program satisfies Rule 23 and due process and should be approved.

## VII. PROPOSED SCHEDULE

Plaintiffs respectfully propose the following schedule, which is also set forth in the accompanying proposed Preliminary Approval Order. Each deadline runs from the date the Court enters the Preliminary Approval Order or from the date notice is completed (the "Notice Date"), as indicated.

| Event | Deadline |
|---|---|
| Notice completed (mailing/email and publication) | Within 30 days after preliminary approval |
| Deadline to submit Claim Forms and Subrogation Claim Forms | 60 days after the Notice Date |
| Deadline to request exclusion (opt out) or to object | 60 days after the Notice Date |
| Plaintiffs file motion for final approval; Class Counsel file application for attorneys' fees and expenses | No later than 15 days before the Final Approval Hearing |
| Final Approval Hearing | No earlier than 90 days after preliminary approval, at the Court's convenience |

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and enter the accompanying [Proposed] Preliminary Approval Order: (1) preliminarily approving the Settlement; (2) certifying the Settlement Class for settlement purposes; (3) appointing the Class Representatives and Class Counsel; (4) approving the forms and manner of notice and appointing Simpluris as Settlement Administrator; (5) approving the Claim Form and Subrogation Claim Form; and (6) scheduling a Final Approval Hearing.

Respectfully submitted this 22nd day of July, 2026.

By: /s/ Kenneth Brosnahan, Esq.
Georgia Bar No. 086345
E-mail: kwb@brosnahan-law.com
Linda G. Carpenter, Esq.
Georgia Bar No. 111285
E-mail: lgc@brosnahan-law.com
The Brosnahan Law Firm
31 Lenox Point, N.E.
Atlanta, Georgia 30324
T: (404) 853-8964

Douglas H. Dean
Georgia Bar No. 130988
E: doug@deanthaxton.law
Dean Thaxton, LLC
601 E. 14th Avenue
Cordele, Georgia 31010
T: (229) 271-9323

Adam Hoipkemier, Esq.
Georgia Bar No. 745811
E-mail: adam@ehdhlaw.com
Epps Holloway DeLoach
& Hoipkemier LLC
1220 Langford Drive
Bldg. 200
Watkinsville, Georgia 30677
T: (706) 508-4000

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), specifically Times New Roman 14-point font.

/s/ Kenneth Brosnahan
Georgia Bar No. 086345

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below I electronically filed the foregoing **PLAINTIFFS' UNOPPOSED MOTION TO CERTIFY SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH SUPPORTING MEMORANDUM OF LAW** with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

This 22nd day of July, 2026.

/s/ Kenneth Brosnahan
Kenneth Brosnahan
Georgia Bar No. 086345
E-mail: kwb@brosnahan-law.com
The Brosnahan Law Firm
31 Lenox Point, N.E.
Atlanta, Georgia 30324
T: (404) 853-8964